RECEIPT #_____
AMOUNT $ 250
SUMMONS ISSUED 1-12
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. M
DATE_ 9-12-05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05CV _____

)
NEW CINGULAR WIRELESS PCS LLC,          )
                              Plaintiff, ·  )
                                        )
        v.                              )
                                        )
TOWN OF NORTH ANDOVER, MASSACHUSETTS,   )
BOARD OF APPEALS of the TOWN OF NORTH    )
ANDOVER, ELLEN McINTYRE, RICHARD J. BYERS, )
ALBERT P. MANZI III, JOSEPH D. LaGRASSE,  )
DAVID R. WEBSTER, DANIEL S. BRAESE,      )
THOMAS D. IPPOLITO, RICHARD M. VAILLANCOURT,)
as they are members and associate members of the Board, )
                              Defendants,  )

05 - 11841 NG

**COMPLAINT**                    MAGISTRATE JUDGE Sorokin

1.      New Cingular Wireless PCS LLC ("Cingular") appeals under both federal and

state law from the North Andover Board of Appeals' ("Board") denial, by a 2 – 2 vote, of

Cingular's application for a variance for a proposed wireless communication facility. The

proposed facility would be on an existing, guyed, orange-and-white-striped lattice

communications tower at 300 Chestnut Street, North Andover, MA (also known as 0 Chestnut

Street, Assessors Map 98C, Lot 2) ("Site"). The proposed facility would cover over 1.2 square

miles of an undisputed gap in coverage on a major road and surrounding neighborhoods.

Attached hereto as Exhibit A is a certified copy of the Board's Decision filed with the North

Andover Town Clerk on August 23, 2005.

2.      Cingular seeks relief pursuant to Section 704 of the Telecommunications Act of

1996, Pub. L. No. 104-104 ("the Telecommunications Act"), codified at Section 332(c)(7) of the

1

Communications Act of 1934, 47 U.S.C. §§ 151-691, and the Massachusetts Zoning Act, M.G.L. c. 40A, § 17.

3.      Cingular also seeks declarations invalidating Section 8, paragraph 8.9(3)(c)(v) of the North Andover Zoning Bylaw ("Bylaw") (600' minimum distance to lot line), on its face and as applied to the proposed installation of Cingular antennas, equipment and structures on and next to the existing tower.

4.      Cingular also seeks a declaration that the annual radio frequency monitoring provisions of Section 8.9(8)(a) of the Bylaw are preempted by FCC jurisdiction and therefore invalid.

## JURISDICTION

5.      This Court has subject matter jurisdiction over this action pursuant to (a) Section 332(c)(7)(B)(5) of the Telecommunications Act because Cingular has been adversely affected and aggrieved by the Board of Appeals' denial of its application, and (b) 28 U.S.C. § 1331 because this action presents a federal question under the Telecommunications Act. This action appropriately may be brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (the Declaratory Judgment statute) because an actual controversy exists. The Court has supplemental jurisdiction over the Massachusetts state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Cingular's claims arose in this judicial district.

## THE PARTIES

7.      Cingular is a limited liability company qualified to do business in Massachusetts, with a business address of 580 Main Street, Bolton, Massachusetts 01740. Cingular is licensed

2

by the Federal Communications Commission ("FCC") to provide personal wireless service in areas that include North Andover, Massachusetts.

8. The Defendant Town of North Andover ("the Town") is a duly constituted municipality in Essex County, Massachusetts, with its principal office located at the Municipal Building, 120 Main Street, North Andover, MA 01845.

9. The Defendant Board is a duly constituted board of the Town with an office located at the Municipal Building, 120 Main Street, North Andover, MA 01845.

10. The Defendant Ellen P. McIntyre, is the Chair and a member of the Board. She resides at 23 Tanglewood Lane, North Andover, MA 01845.

11. The Defendant Thomas D. Ippolito an associate member of the Board. He resides at 338 Abbott Street, North Andover, MA 01845.

12. The Defendant Richard M. Vaillancourt is an associate member of the Board. He resides at 454 Stevens Street, North Andover, MA 01845.

13. The Defendant Richard J. Byers is Clerk and a member of the Board. He resides at 97 Forest Street, North Andover, MA 01845.

14. The Defendant Joseph D. LaGrasse is Vice-Chair and a member of the Board. He resides at 40 Sugarcane Lane, North Andover MA 01845.

15. The Defendant David R. Webster is a member of the Board. He resides at 707 Waverly Road, North Andover, MA 01845.

16. The Defendant Albert P. Manzi, III, is a member of the Board. He resides at 1028 Salem Street, North Andover, MA 01845.

17. The Defendant Daniel S. Braese is a member of the Board. He resides at 21 Periwinkle Way, North Andover, MA 01845.

3

18.     Defendant Board members Thomas D. Ippolito, Richard M. Vailancourt, Ellen McIntyre and Richard Byers rendered the decision at issue in this case.

19.     Messrs. Ippolito and Vailancourt voted against the requested variance, resulting in a denial of the application pursuant to Mass. Gen. Laws c. 40A, § 15.

## THE TELECOMMUNICATIONS ACT OF 1996

20.     Congress has determined that there is a public need for wireless communications services such as that provided by Cingular. The Telecommunications Act was intended to "provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies to all Americans".

21.     The Telecommunications Act, while preserving certain State and local authority over the placement, construction or modification of wireless facilities, expressly preempts State or local governments from regulating such facilities in a manner that prohibits or has the effect of prohibiting the provision of personal wireless services, or from unreasonably discriminating among providers of functionally equivalent wireless services. It requires that the decisions of State or local governments concerning any requests for authorization to place, construct or modify wireless facilities must be supported by "substantial evidence."

22.     The Telecommunications Act further prohibits State or local governments from regulating the placement or construction of wireless service facilities on the basis of perceived environmental or health effects of radio frequency emissions to the extent that such facilities comply with standards promulgated by the FCC.

## THE SITE

23.     The Site contains an existing, 152 foot tall lattice tower, supported by guy wires,

4

owned by SBA Towers, Inc. ("SBA"). The existing tower was permitted in 1958, pursuant to a variance. It is painted orange and white in accordance with FAA regulations.

24.    The Site is large (227,996 square feet), topographically higher than the surrounding area, and contains dense woods within which the proposed facilities will be suitably concealed from an aesthetic standpoint. It is within a R-3 District under the North Andover Zoning Bylaw.

25.    On June 30, 2000, the North Andover Planning Board issued a special permit, with conditions, to Sprint Spectrum, LP to install and operate a wireless service facility on the existing tower structure at 300 Chestnut Street. Among other things, the Planning Board found that the Site "is an appropriate location for the project as it is being collocated on an existing wireless location" and that the use "will not adversely affect the neighborhood."

## CINGULAR'S PROPOSED FACILITY

26.    Cingular proposes to attach antennas at an antenna centerline height of 122' on the existing 137' tower. Cingular also proposes to install within the existing fenced compound an approximately 11' x 20' equipment shelter for its ancillary equipment. Coaxial cables will connect the antennas to the base station equipment and the facility will be served by associated power and telephone connections existing at the site.

27.    Cingular's proposal will not increase the height of the existing tower or enlarge the existing fenced equipment compound.

28.    Currently, there are multiple antennas on the tower including those of Cingular's direct competitor, Sprint Spectrum.

29.    The proposed equipment shelter will be concealed to the greatest extent possible by existing trees and vegetation. In addition, the facility will be surrounded by an 8' fence.

5

30.     The proposed facility is passive and unobtrusive, requires no employees or customers on the premises, and has no characteristics that are incompatible with nearby properties. It is not located in wetland resource areas or buffer zones, will not include any outdoor storage or any solid waste receptacles, and, because it is unmanned, will not require a means of water supply or sewage disposal.

31.     The proposed facility will involve no offensive lighting, odors, smoke, noise, or refuse materials.

32.     The proposed facility is consistent with the purpose of North Andover's Wireless Service Facilities Zoning Bylaw Section 8.9.1.a, because it is designed "to minimize the visual and environmental impacts as well as any potential deleterious impact on property value, of wireless services facilities..." and to "encourage appropriate land use, environmental protection, preservation of North Andover's rural character and the provision of adequate infrastructure development in North Andover."

33.     The proposed facility would not be detrimental to the neighborhood, would be in harmony with the purposes and intent of North Andover's Zoning Bylaw, and would satisfy all of the criteria for the variance requested.

## THE NORTH ANDOVER ZONING BYLAW

34.     Section 8.9 of the North Andover Zoning Bylaws governs wireless service facilities in North Andover. It provides that a wireless service facility may be located in any zoning district in the Town upon issuance of a Special Permit with Site Plan Review by the North Andover Planning Board, provided the carrier demonstrates that the facility is necessary to provide adequate service to the public and the facility satisfies all of the other requirements of the Town's Zoning Bylaw applicable to wireless service facilities (Section 8.9.3.a).

6

35.    Section 8.9.3.b provides that wireless service facilities must be located on preexistent structures if feasible unless (a) the applicant can demonstrate to the satisfaction of the Special Permit Granting Authority (the Planning Board) that it is not feasible to locate on a preexistent structure and (b) the wireless service facility is "camouflaged to the greatest extent possible."

36.    Sections 8.9(3)(c) and 8(9)(4) of North Andover's Zoning Bylaw set forth numerous dimensional and design requirements applicable to wireless service facilities, and Section 8.9(5)(d) sets forth numerous filing requirements.

37.    Section 8.9(3) was amended by the citizen-initiated Article 21 of the 2000 North Andover Town Meeting to amend setback requirements for wireless facilities. The Attorney General approved the Amendment on October 12, 2000. On information and belief, the amendment took effect after Sprint obtained its Special Permit for the Site.

38.    Section 8.9(3)(c)(v)(1) provides in relevant part as follows: "A minimum setback of 600 feet shall be required for all wireless devices, antenna and their mounting structures, whether attached to a new or existing structure, as measured from the adjacent property line of properties which are either zoned for, or contain, residential and or educational uses of any types."

39.    Section 8.9(3)(c)(v)(2) also provides as follows: "In the event that a preexistent structure is proposed as a mount for a wireless service facility, the setback provisions of the zoning district shall apply. In the case of the preexistent non-conforming structures, wireless service facilities and their equipment shelters shall not increase any non-conformity."

## NEED FOR ADDITIONAL COVERAGE IN NORTH ANDOVER

40.    Cingular currently covers certain portions of western North Andover from several

7

sites. Existing coverage reflects transmissions from the following nearby existing/proposed facilities:

> ➤ Site MA0116, Rooftop facility, 224 Winthrop Avenue (Hampton Inn), Lawrence;
>
> ➤ Site MA0425, Rooftop facility, 23 Main Street, Andover;
>
> ➤ Site MA3045, Co-Location facility on tower on Boston Hill, North Andover; and
>
> ➤ Site MA1385, Co-Location facility on tower at Stevens' Estate, 723 Osgood Street, North Andover.

41.     Cingular submitted to the Board a radiofrequency ("RF") report, with coverage charts, demonstrating (a) the need for the facility at the Site, (b) the coverage it will provide, and (c) the other existing Cingular's facilities in North Andover and outside North Andover within one mile of its boundary.

42.     As demonstrated by the submitted coverage maps, without the proposed facility at this Site, Cingular will be unable to provide adequate indoor and in-vehicle coverage – and will therefore continue to have a significant gap in coverage – in this area of North Andover ("Coverage Gap").

43.     Cingular's existing facilities in the towns surrounding North Andover and its two approved facilities in North Andover provide only limited coverage in parts of North Andover. These facilities leave a significant gap in coverage in the area of the Coverage Gap at issue here.

44.     To test the existence of a coverage gap, the Board hired (at Cingular's expense ) Mark Hutchins, an independent consultant.

45.     Mr. Hutchins evaluated coverage in the Coverage Gap and confirmed that there are "significant gaps in Cingular's North Andover coverage, particularly along Salem Turnpike (Route 114) near Andover Bypass, and nearby residential areas to the north and east." He

8

calculated that the proposed facility would "remedy" the gap "over an area just over 1.2 square miles."

46.     None of Cingular's existing or approved sites provides or is capable of providing Cingular coverage to the portions of North Andover that would be served by the proposed facility at the Site. Mr. Hutchins concurred: "These gaps are unable to be remedied by the use of existing cells; this justifies a new facility in this area which, through collocation on the SBA tower, enables closing much of the gap without building a new support structure."

47.     The Coverage Gap includes high-demand areas in which Cingular currently lacks adequate communications service.

48.     The proposed facility would also help to provide a smooth transition with existing sites to which it would provide a coverage link.

49.     There is no other suitable preexisting structure in this area of North Andover upon which to locate a wireless service facility. Nor has Cingular identified any superior alternative site that would enable it to provide quality coverage in the Coverage Gap.

## THE PROCEEDINGS BEFORE THE BOARD

50.     On December 2, 2004, Cingular's consultant submitted a Building Permit application to the North Andover Building Department, seeking to collocate antennas on the existing tower at the Site, with equipment in a shelter in the existing compound at the base of the tower.

51.     On December 9, 2004, the Building Inspector of North Andover denied the Building Permit, because he ruled that the proposal required both a special permit from the Planning Board and a setback variance from the Zoning Board of Appeals.

52.     Therefore, pursuant to G.L. c. 40A, § 10, and Section 10.4 of the North Andover

9

Zoning Bylaw, Cingular submitted an application to the Board on January 10, 2005, for a variance from the 600' setback provision, section 8.9(3)(c)(v) of North Andover's Wireless Service Facilities Zoning Bylaw.

53.     The Board of Appeals initially noticed a public hearing on Plaintiff's application on February 8, 2005, and continued the matter to April 12, May 12, June 14, July 12 and August 9, 2005.

54.     During the hearings, Cingular presented its plans, radio frequency analysis, radio frequency maps, a certification by a structural engineer, dated February 17, 2005, of the structural integrity of the existing tower to support the proposed Cingular installation, and proof of compliance with FCC radio frequency emissions regulations.

55.     Cingular also presented other material demonstrating that literal compliance with Section 8.9(3)(c)(v) would cause substantial hardship due to the topography and shape of the lot, and due to existing structures on the lot.

56.     The lot's unique combination of high terrain, large size and existing tower is not shared by other lots in the district. Indeed, the lot is the only one in the district that would permit coverage to this area of North Andover in compliance with the Bylaw's preference (Section 8.9.3.b) for location of wireless antennas upon existing structures. To deny needed coverage to the Coverage Gap from the Site would cause substantial hardship to Cingular in its FCC-licensed mission to provide coverage, and would cause financial hardship to the tower owner, SBA.

57.     The Board did not contest that, as Cingular stated by letter of May 6, 2005, denial of the variance would "would prevent Cingular from (a) providing effective wireless communications services to its existing and potential customers in North Andover in an area where it currently has inadequate coverage, (b) satisfying the mandate of, and realizing the rights

10

granted by, its federal license and the federal statute and regulations pursuant to which the license was issued, and (c) improving competition in the telecommunications industry as provided for in the Federal Telecommunications Act of 1996 (at least one other wireless communications provider – Sprint – has already been permitted to install a facility on this tower)."

58.    Cingular's evidence showed that its proposed facility would comply with the intent and purpose of the bylaw justifying a variance from Section 8.9(3)(c)(v). It would minimize the number of towers in Town by using an existing communications tower, would not materially increase any adverse visual impact of the existing tower, would comply with federal regulations regarding transmissions and exposure to radiofrequency emissions, and would be unobtrusive, requiring after installation only about one trip per month for routine maintenance.

59.    Cingular also pointed out that the Board should consider the Telecommunications Act in deciding whether to grant a variance, because, among other things, the "Board cannot deny a variance if in doing so it would have the effect of prohibiting wireless services. ... In other words, the need for closing a significant gap in coverage, in order to avoid an effective prohibition of wireless services, constitutes another unique circumstance when a zoning variance is required." Nextel Communications of the Mid-Atlantic, Inc. v. Town of Wayland, 231 F.Supp. 2d 396, 406-407 (D. Mass. 2002).

60.    During the Board's hearings, various citizens voiced objections to the proposed facility including, without limitation, "health issues," that would purportedly result from allowing the proposed FCC-licensed facility to operate, despite the undisputed evidence that radio frequency emissions from the proposed facility would only be a small fraction of the allowed exposure limit under FCC regulations. The total exposure from all antennas on the tower would not exceed 3.7% of FCC-allowed limits, of which Cingular's proposed facility would contribute

11

less than 0.6% of the limits. Mr. Hutchins agreed that "cumulative exposure from the proposed facility is certain to be well below [FCC] guidelines for human exposure to RF radiation as long as tower access is restricted."

61.    The Board deliberated on August 9, 2005, after which it voted 2 to 2 on a motion to grant the requested variance. The vote operated as a denial, because Mass. Gen. Laws c. 40A, § 10 requires a supermajority of four votes in these circumstances to approve a variance.

62.    On August 23, 2005, the Board filed its Decision with the Town Clerk.

63.    In its Decision, the Board cited as justification for its denial only the boilerplate that "a literal enforcement of the dimensional provisions of the ordinance would not involve substantial hardship, financial or otherwise, to the petitioner, that desirable relief may not be granted without substantial detriment to the public good, and that desirable relief may not be granted without nullifying or substantially derogating from the intent or purpose of" the Bylaw.

64.    The Board's Decision did not specify any alleged detriment to the public good or any derogation from the intent or purpose of the Bylaw that would result from placement of an additional set of antennas on an existing communications tower already used by Cingular's competitor.

65.    Nor did the Board discuss any Telecommunications Act issue, let alone whether Cingular needed the Site to close a substantial gap in coverage within the Coverage Gap, whether denial of this application would effectively prohibit Cingular from providing coverage in the Coverage Gap, or whether denial would unreasonably discriminate against Cingular while its direct competitor enjoys unrestricted use of the tower facility.

66.    Neither the generalized concerns expressed in the Board's Decision nor any

12

specific issue mentioned during the deliberations constitutes a valid basis for denying the requested variances.

## IRREPARABLE HARM

67. By denying Cingular the right to install and operate its essential telecommunications facility, the Board has effectively prohibited Cingular from covering an existing significant gap in coverage within North Andover.

68. By denying Cingular the right to use the Site, while Sprint transmits and receives wireless communications signals from the existing tower on the Site, the Board has harmed Cingular in its efforts to compete with Sprint, and has harmed competition in the wireless communications industry generally.

69. As a result, Cingular has suffered and continues to suffer irreparable harm by being denied and delayed the opportunity to install and operate its facility at Site and by being placed at a competitive disadvantage compared to Sprint, which already operates from the Site.

## COUNT I
## (Telecommunications Act of 1996 - Effective Prohibition)

70. Cingular repeats and realleges the allegations of paragraphs 1-69, above.

71. The Telecommunications Act provides in relevant part that "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof – (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i).

72. The North Andover Zoning Bylaw and the Board's denial of Cingular's application for variances "prohibit[s] or ha[s] the effect of prohibiting the provision of personal wireless services," in those areas of the Town that cannot receive wireless communication

13

coverage if the proposed facility is not constructed, in violation of Section 332(c)(7)(B)(i)(II) of the Act.

73.     The existence of a Coverage Gap, and the need to cover that gap from the Site were undisputed and indisputable.

74.     Yet, the Decision and section 8.9(c)(v) of the Bylaw prohibit use of the only structure complying with the Bylaw's stated preference to use existing structures, and no other property appears zonable for a wireless facility to cover this Coverage Gap.

75.     Indeed, as a matter of mathematics (area = $\Pi R^2$), the 600' setback in Bylaw Section 8.9(c)(v) requires a minimum lot size of over 1,130,000 square feet – about 26 acres. Beyond that, any proposed facility would still have to comply with the restrictive provisions of the remainder of the Bylaw.

76.     For these and other reasons stated above, the Court should declare that the North Andover Zoning Bylaw and the Board's Decision violate the prohibition of § 332(c)(7)(B)(i) on its face and as applied.

## COUNT II
## (Telecommunications Act of 1996 – Unlawful Discrimination)

77.     Cingular repeats and realleges the allegations of paragraphs 1-76, above.

78.     The Act provides in relevant part that "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof – (I) shall not unreasonably discriminate among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i).

79.     The Bylaw and the Decision of the Board violate this prohibition.

80.     Without limitation, the Board's denial of Cingular's application to collocate on an

14

existing tower on which Sprint Spectrum already operates a wireless communication facility "unreasonably discriminate[s] among providers of functionally equivalent services", in violation of Section 332(c)(7)(B)(i)(I) of the Act.

## COUNT III
### (Telecommunications Act of 1996 - No Substantial Evidence for Denial)

81.    Cingular repeats and realleges the allegations of paragraphs 1- 80, above.

82.    The Telecommunications Act provides that "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii).

83.    The Board's denial of Cingular's application is not supported by substantial evidence, in violation of this requirement.

84.    Without limitation, there was no substantial evidence refuting the existence of a substantial gap in coverage, the ability of the proposed site to cover more than 1.2 acres of the Coverage Gap, the absence of any other existing structure that could cover the Coverage Gap, the absence of any other zonable alternative, the lack of detriment to the neighborhood, the unique characteristics of the Site and existing tower structure, or the proposal's conformity to the purposes of the North Andover Zoning Bylaw.

85.    Moreover, the Board's failure even to consider the requirements of the Telecommunications Act left it without any findings or evidence that would warrant denial of a variance.

## COUNT IV
### (Telecommunications Act of 1996 - Improper Basis)

86.    Cingular repeats and realleges the allegations of paragraphs 1-85, above.

15

87.    The Telecommunications Act provides in relevant part that "No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the bases of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations, concerning such emissions."  47 U.S.C. § 332(c)(7)(B)(iv).  The proposed installation fully complies with those regulations.  The term "environmental effects" as used in this section includes health effects.

88.    The Board's denial of the variances requested by Cingular on the basis of a 600' setback in a zoning bylaw, which was adopted at the behest of citizens of the Town based upon perceived health effects, as reinforced by public comments at the hearings expressly invoking alleged health effects of an FCC-compliant facility, violates this requirement.

## COUNT V
## (M.G.L. c. 40A, Section 17)

89.    Cingular repeats and realleges the allegations of paragraphs 1-88, above.

90.    The Board's denial of Cingular's application is arbitrary and capricious, exceeds the Board's authority under Massachusetts General Laws Chapter 40A, lacks sufficient findings and is based on errors of law.

## COUNT VI
## (State Law: Unconstitutional As-Applied)

91.    Cingular repeats and realleges the allegations of paragraphs 1-90 above.

92.    Under the Massachusetts Constitution, a zoning bylaw, though valid generally, may be unconstitutional as applied to a particular parcel of land when, due to the peculiarities of the parcel, application of the by-law is unnecessary to accomplish the public purpose for which the by-law was created.

16

93. Here, the Site has a glaring "peculiarity" – an existing telecommunications tower already serving a wireless carrier and numerous other broadcasters.

94. Because of the existing tower and lawful communication uses at the Site, there is no public purpose served by prohibiting another wireless carrier from mounting a facility on and next to the existing tower, on the supposed ground that 600' of separation is required between wireless facilities and a residential lot line, as Section 8.9.(3)(c)(v) purports to do.

## COUNT VII
## (Declaratory Judgment)

95. Cingular repeats and realleges the allegations of paragraphs 1-94, above.

96. Sections 8.9.(3)(c)(v) of the Zoning Bylaw (600' setback from a residential property line) is unlawful and invalid as applied to this application and on its face.

97. Without limitation, that provision (a) violates the Telecommunications Act of 1996, as set forth in Counts I through IV, (b) serves no valid public purpose (and is therefore unconstitutional under state and federal law) as applied to additional attachments to an existing telecommunications tower, (c) is void for vagueness in general and/or as applied here, and (d) conflicts with the uniformity requirement of G.L. c. 40A, section 4 ("Any zoning ordinance or by-law which divides cities and towns into districts shall be uniform within the district for each class or kind of structures or uses permitted").

98. Because Section 8.9.(3)(c)(v) has no purpose beyond effectuating supposed health-based objections to the environmental emissions of a facility that complies with FCC radiofrequency emissions regulations, it is preempted by federal law on its face and as applied.

## COUNT VIII
## (Declaratory Judgment – Preemption Of RFR Monitoring by FCC Jurisdiction)

99. Cingular repeats and realleges the allegations of paragraphs 1 – 98 above.

17

100.    Section 8.9(8)(a) of the North Andover Bylaw purports to regulate radio frequency emissions from federally licensed wireless telecommunications facilities by requiring "RFR [radiofrequency radiation] measurements . . . at annual intervals from the date of issuance of the Special Permit."

10.1    This regulation purports to apply not only to the Site, but to all existing sites of all wireless carriers.

102.    Through this section, the Town of North Andover purports to regulate a field that Congress has reserved exclusively to the FCC.

103.    In the Communications Act of 1934, Congress granted the field of regulating radio frequency transmissions exclusively to the FCC. See, e.g. 47 U.S.C. §§ 152(a), 301.

104.    The Communications Amendments Act of 1982 confirmed and strengthened the FCC's federal authority over radio frequency emissions. See 47 U.S.C. § 302(a). H.R. Conf. Rep. No. 97-765, at 23, 33 (1982), reprinted in 1982 U.S.C.C.A.N. 2261, 2267, 2277.

105.    Pursuant to its statutory authority, the FCC has promulgated regulations setting forth both exposure limits for RF emissions and specific mechanisms for enforcing those exposure limits. In doing so, it has expressly refrained from imposing unnecessary and burdensome requirements upon carriers, consistent with Congress' intention to make competitive, cost-effective communications services available to all Americans.

106.    The FCC has promulgated RF exposure limits in 47 CFR 1.1310. According to Table 1 in that regulation, the exposure limit in the 1900 MhZ band, one of the bands in which Cingular operates, is 1 milliwatt (1,000 microwatts) per square centimeter – many times greater than the actual maximum exposure at ground level from Cingular's facilities in North Andover.

18

The MPE limits are calculated assuming the maximum power density with *all channels* operating at their *maximum* power.

107.    The FCC also expressly regulates when a routine compliance evaluation regarding these limits is and is not required: "A determination of compliance with the exposure limits in Sec. 1.1310 or Sec. 2.1093 of this chapter (**routine environmental evaluation**), and preparation of an EA if the limits are exceeded, is necessary **only for facilities, operations and transmitters that fall into the categories listed in table 1,** or those specified in paragraph (b)(2) of this section. **All other facilities, operations and transmitters are categorically excluded from making such studies** or preparing an EA, except as indicated in paragraphs (c) and (d) of this section [relating to environmental assessments ("EA"), not to routine evaluation]."  47 C.F.R. 1.1307(b)(1) (emphasis added).

108.    The applicable table in 47 C.F.R. 1.1307(b) shows that PCS facilities are categorically excluded from routine evaluation as long as they are 10 meters (approximately 32.8 feet) above ground:

Table 1 - Transmitters, Facilities and Operations Subject to Routine Environmental Evaluation

| Service (title 47 CFR rule part) | Evaluation required if: |
|---|---|
| Personal Communications Services (part 24) | . . .        (2) Broadband PCS (subpart E): non-building-mounted antennas: height above ground level to lowest point of antenna, 10m and total power of all channels =2000 W ERP (3280 W EIRP) . . . |

109.    All of Cingular's non-building mounted antennas in North Andover (including the Site) are much more than 10 meters AGL.

110.    Carriers on a multi-carrier telecommunications tower (like the Site) only have responsibility for correcting any excessive RF emissions from the entire tower if their power

19

density levels contribute 5% or more of the exposure limit applicable to the tower. 47 C.F.R. 1.1307(b)(3).

111. Based upon worst-case calculations at the Site, Cingular would contribute less than or equal to 0.6% of the total exposure limit.

112. The purpose of the FCC RF evaluation regulations is "to provide a proper balance between the need to protect the public and workers from exposure to excessive RF electromagnetic fields and the need to allow communications services to readily address growing marketplace demands." 62 Fed. Reg. 47960, 47961 (9/12/97).

113. "Use of the new guidelines will ensure that the public and workers receive adequate protection from exposure to potentially harmful RF electromagnetic fields." Id. at 47962.

114. Local zoning provisions having the "intent and effect ... to regulate the operations - not the placement, construction and modification - of licensed facilities" are preempted because they focus on "radio frequency regulation rather than local land use concerns" (In Re Cingular Wireless, L.L.C, 2003 WL 21517835, FCC Docket No. 02-100 (July 7, 2003) at page 10-11).

115. Nor are preempted local regulations saved by the claim that the local government is attempting to "assure itself that a carrier is complying with FCC standards" where the regulation is "effectively regulating federally licensed operation" as opposed to "traditional zoning regulation of the physical facility." Id.

116. The annual RFR measurement requirement of North Andover Bylaw Section 8.9(8) is therefore preempted in its entirety.

WHEREFORE, Cingular requests that this Court enter judgment:

1. Declaring that the North Andover Bylaw and the Board's Decision violate the

20

Telecommunication Act of 1996;

2.    Granting temporary, preliminary, and permanent injunctive relief ordering that
       Cingular be permitted immediately to install its proposed facility in accordance
       with its application and plans therefor;

3.    Annulling the portion of the Board's Decision denying Cingular's application for
       variances;

4.    Declaring that Section 8.9.(3)(c)(v) of the Zoning Bylaw (600' setback from a
       residential lot line) is unlawful and invalid as applied and on its face;

5.    Declaring that Section 8.9(8)(a) is preempted and invalid as applied to facilities
       exempt from annual review under FCC regulations.

6.    Ordering the Board to issue the requested variances and all other zoning relief
       necessary for the proposed facility;

7.    Awarding Cingular reasonable attorneys' fees and costs; and

8.    Awarding Cingular such other and further relief as the Court deems just and
       proper.

The Plaintiff
By its attorneys,



Stephen D. Anderson (BBO #018700)
Douglas H. Wilkins (BBO #528000)
Scott Lacy (BBO #633323)
ANDERSON & KREIGER LLP
43 Thorndike Street
Cambridge, MA 02141
(617) 252-6575

Dated: September 12, 2005

g:\docs\cin\ma\northandoverchestnut\p\fed-complaint01.doc

21



**Town of North Andover**
**Community Development and Services Division**
**Office of the Zoning Board of Appeals**
400 Osgood Street
North Andover, Massachusetts 01845

Town Clerk Time Stamp

Raymond Santilli,
Interim Community
Development Director

Telephone  (978) 688-9541
Fax       (978) 688-9542

Any appeal shall be filed within
(20) days after the date of filing
of this notice in the office of the
Town Clerk, per Mass. Gen. L. ch.
40A, §17.

**Notice of Decision**
**Year 2005**

**Property at: 300 Chestnut Street**

| NAME: | Cingular Wireless LLC, 580 Main Street, Bolton, MA 01740 | HEARING(S): | February 8, April 12, May 12, June 14, July 12, & August 9, 2005 |
|---|---|---|---|
| ADDRESS: | for premises at: 300 Chestnut Street North Andover, MA 01845 | PETITION: | 2005-001 |
| | | TYPING DATE: | August 11, 2005 |

The North Andover Board of Appeals held a public hearing at its regular meeting on Tuesday, August 9, 2005 at 7:30 PM in the Town Hall top floor meeting room, 120 Main Street, North Andover, Massachusetts upon the application of **Cingular Wireless LLC**, 580 Main Street, Bolton, MA 01740, for premises at: **300 Chestnut Street**, North Andover, requesting a dimensional Variance from Section 8, Paragraph 8.9(3)(c)(v) of the Zoning Bylaw, minimum requirements of the distance to lot lines, in order to install additional antennas on the existing antenna tower. Said premise affected is property with frontage on the East side of Chestnut Street within the R-3 zoning district. The legal notices were published in the Eagle Tribune on January 24 & January 31, 2005.

The following voting members were present: Ellen P. McIntyre, Richard J. Byers, Thomas D. Ippolito, and Richard M. Vaillancourt. The following non-voting members were present: Joseph D. LaGrasse and David R. Webster.

Upon a motion by Richard J. Byers and 2nd by Richard M. Vaillancourt, the Board voted to grant the dimensional Variance from Section 8, Paragraph 8.9(3)(c)(v), minimum requirements of the distance to the lot lines in order to install additional antennas on the existing antenna tower.

Voting in favor of the motion: Ellen P. McIntyre and Richard J. Byers.
Voting to deny the motion: Thomas D. Ippolito and Richard M. Vaillancourt.

The Board finds that the motion for the Variance petition failed to receive the required super majority of four votes, per Mass. Gen. L ch. 40A §15. The Board finds that the applicant was requested to address the issue of hardship in general as well as hardship as it pertains to soil, shape, and topography during the April 12, 2005 hearing. The applicant provided the May 6, 2005 written response and the May 12, 2005 verbal response during the hearing to the issue of hardship as it pertains to gap coverage, but not to soil, shape and topography. The Board finds that owing to circumstances relating to the soil conditions, shape, or topography of the land or structures, and especially affecting such land but not affecting generally the zoning district in which it is located, a literal enforcement of the dimensional provisions of the ordinance would not involve substantial hardship, financial or otherwise, to the petitioner, that desirable relief may not be granted without substantial detriment to the public good, and that desirable relief may not be granted without nullifying or substantially derogating from the intent or purpose of this Bylaw as stated in Section 1 and Section 10, Paragraph 10.4.

ATTEST:
A True Copy
Joyce A. Bradshaw
Town Clerk

Town of North Andover
Board of Appeals,

Ellen P. McIntyre, Chair
Decision2005-001
M98.CP2.

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

NEW CINGULAR WIRELESS PCS LLC

**DEFENDANTS**

See attached list

**(b)** County of Residence of First Listed Plaintiff    Out of State
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Essex
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Stephen D. Anderson, BBO #018700; Douglas H. Wilkins, BBO# 528000
Anderson & Kreiger LLP, 43 Thorndike St, Cambridge, MA  02141
(617) 252-6575

Attorneys (If Known)

05-11841 NG

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Federal Telecommunications Act of 1196, 47 U.S.C., sec. 151, et seq.

Brief description of cause:
Federal statute violated by prohibiting wireless communications facility through decision of Zoning Board of Appeals and through Zoning Bylaw

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
09/12/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)_____NEW CINGULAR WIRELESS PCS LLC v. TOWN OF NORTH ANDOVER, ET AL._____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| [ ] | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
| [✔] | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121<br>740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.  for patent, trademark or copyright cases |
| [ ] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,<br>315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,<br>380, 385, 450, 891. |
| [ ] | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,<br>690, 810, 861-865, 870, 871, 875, 900. |
| [ ] | V. | 150, 152, 153. |

05 - 11841 NG

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                        YES [ ]        NO [✔]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

                                                                        YES [ ]        NO [✔]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                        YES [ ]        NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                        YES [ ]        NO [✔]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                        YES [✔]        NO [ ]

   A.    If yes, in which division do all of the non-governmental parties reside?

         Eastern Division [✔]          Central Division [ ]          Western Division [ ]

   B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

         Eastern Division [ ]          Central Division [ ]          Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                                        YES [ ]        NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME_____Douglas H. Wilkins_____

ADDRESS____Anderson & Kreiger LLP, 43 Thorndike St., Cambridge, MA  02141_____

TELEPHONE NO.____(617) 252-6575_____

(CategoryForm.wpd - 5/2/05)