UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05CV 11841 NG

|  |  |
|---|---|
| NEW CINGULAR WIRELESS PCS LLC,<br>                                 Plaintiff,<br>      v.<br><br>TOWN OF NORTH ANDOVER, MASSACHUSETTS,<br>BOARD OF APPEALS of the TOWN OF NORTH<br>ANDOVER, ELLEN McINTYRE, RICHARD J. BYERS,<br>ALBERT P. MANZI III, JOSEPH D. LaGRASSE,<br>DAVID R. WEBSTER, DANIEL S. BRAESE,<br>THOMAS D. IPPOLITO, RICHARD M. VAILLANCOURT,<br>as they are members and associate members of the Board, and<br>PLANNING BOARD OF NORTH ANDOVER and<br>Richard Nardella, John Simmons, Richard Rowen, Alberto<br>Angles, and Jack Green, as they are members and associate<br>Members of the North Andover Planning Board,<br>                                 Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SUPPLEMENTAL AMENDED COMPLAINT

1.    New Cingular Wireless PCS LLC ("Cingular") appeals under both federal and

state law from the North Andover Board of Appeals' ("Board") denial, by a 2 – 2 vote, of

Cingular's application for a variance for a proposed wireless communication facility.  The

proposed facility would be on an existing, guyed, orange-and-white-striped lattice

communications tower at 300 Chestnut Street, North Andover, MA (also known as 0 Chestnut

Street, Assessors Map 98C, Lot 2) ("Site").  The proposed facility would cover over 1.2 square

miles of an undisputed gap in coverage on a major road and surrounding neighborhoods.

Attached hereto as Exhibit A is a copy of the certified copy of the Board's Decision filed with the

North Andover Town Clerk on August 23, 2005.  (The original certification was filed with the

original Complaint.).

2. Cingular seeks relief pursuant to Section 704 of the Telecommunications Act of 1996, Pub. L. No. 104-104 ("the Telecommunications Act"), codified at Section 332(c)(7) of the Communications Act of 1934, 47 U.S.C. §§ 151-691, and the Massachusetts Zoning Act, M.G.L. c. 40A, § 17.

3. Cingular also seeks declarations invalidating Section 8, paragraph 8.9(3)(c)(v) of the North Andover Zoning Bylaw ("Bylaw") (600' minimum distance to lot line), on its face and as applied to the proposed installation of Cingular antennas, equipment and structures on and next to the existing tower.

4. Cingular also seeks a declaration that the annual radio frequency monitoring provisions of Section 8.9(8)(a) of the Bylaw are preempted by FCC jurisdiction and therefore invalid.

4a. Finally, Cingular appeals from, and seeks a declaration regarding, the imposition of a condition by the North Andover Planning Board ("Planning Board") for annual radio frequency monitoring, which the Planning Board included as condition 2(b) in its Special Permit, filed with the Town Clerk on June 9, 2006. A copy of that Decision ("Planning Board Decision") is attached as exhibit B.

**JURISDICTION**

5. This Court has subject matter jurisdiction over this action pursuant to (a) Section 332(c)(7)(B)(5) of the Telecommunications Act because Cingular has been adversely affected and aggrieved by the Board of Appeals' denial of its application, and (b) 28 U.S.C. § 1331 because this action presents a federal question under the Telecommunications Act. This action appropriately may be brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (the Declaratory Judgment statute) because an actual controversy exists. The Court

2

has supplemental jurisdiction over the Massachusetts state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Cingular's claims arose in this judicial district.

## THE PARTIES

7.      Cingular is a limited liability company qualified to do business in Massachusetts, with a business address of 580 Main Street, Bolton, Massachusetts 01740. Cingular is licensed by the Federal Communications Commission ("FCC") to provide personal wireless service in areas that include North Andover, Massachusetts.

8.      The Defendant Town of North Andover ("the Town") is a duly constituted municipality in Essex County, Massachusetts, with its principal office located at the Municipal Building, 120 Main Street, North Andover, MA 01845.

9.      The Defendant Board is a duly constituted board of the Town with an office located at the Municipal Building, 120 Main Street, North Andover, MA 01845.

10.     The Defendant Ellen P. McIntyre, is the Chair and a member of the Board. She resides at 23 Tanglewood Lane, North Andover, MA 01845.

11.     The Defendant Thomas D. Ippolito an associate member of the Board. He resides at 338 Abbott Street, North Andover, MA 01845.

12.     The Defendant Richard M. Vaillancourt is an associate member of the Board. He resides at 454 Stevens Street, North Andover, MA 01845.

13.     The Defendant Richard J. Byers is Clerk and a member of the Board. He resides at 97 Forest Street, North Andover, MA 01845.

14.     The Defendant Joseph D. LaGrasse is Vice-Chair and a member of the Board. He

3

resides at 40 Sugarcane Lane, North Andover MA 01845.

15.    The Defendant David R. Webster is a member of the Board.  He resides at 707 Waverly Road, North Andover, MA 01845.

16.    The Defendant Albert P. Manzi, III, is a member of the Board.  He resides at 1028 Salem Street, North Andover, MA 01845.

17.    The Defendant Daniel S. Braese is a member of the Board.  He resides at 21 Periwinkle Way, North Andover, MA 01845.

18.    Defendant Board members Thomas D. Ippolito, Richard M. Vailancourt, Ellen McIntyre and Richard Byers rendered the decision at issue in this case.

19.    Messrs. Ippolito and Vailancourt voted against the requested variance, resulting in a denial of the application pursuant to Mass. Gen. Laws c. 40A, § 15.

19a.    The Defendant Planning Board is a duly constituted board of the Town with an office located at the Municipal Building, 120 Main Street, North Andover, MA 01845.

19b.    The Defendants, Richard Nardella, John Simmons, Richard Rowen, Alberto Angles, and Jack Green,  are members and associate members of the North Andover Planning Board, and are sued in their official capacities only.

## THE TELECOMMUNICATIONS ACT OF 1996

20.    Congress has determined that there is a public need for wireless communications services such as that provided by Cingular.  The Telecommunications Act was intended to "provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies to all Americans".

21.    The Telecommunications Act, while preserving certain State and local authority

4

over the placement, construction or modification of wireless facilities, expressly preempts State or local governments from regulating such facilities in a manner that prohibits or has the effect of prohibiting the provision of personal wireless services, or from unreasonably discriminating among providers of functionally equivalent wireless services. It requires that the decisions of State or local governments concerning any requests for authorization to place, construct or modify wireless facilities must be supported by "substantial evidence."

22.    The Telecommunications Act further prohibits State or local governments from regulating the placement or construction of wireless service facilities on the basis of perceived environmental or health effects of radio frequency emissions to the extent that such facilities comply with standards promulgated by the FCC.

## THE SITE

23.    The Site contains an existing, 152 foot tall lattice tower, supported by guy wires, owned by SBA Towers, Inc. ("SBA"). The existing tower was permitted in 1958, pursuant to a variance. It is painted orange and white in accordance with FAA regulations.

24.    The Site is large (227,996 square feet), topographically higher than the surrounding area, and contains dense woods within which the proposed facilities will be suitably concealed from an aesthetic standpoint. It is within a R-3 District under the North Andover Zoning Bylaw.

25.    On June 30, 2000, the North Andover Planning Board issued a special permit, with conditions, to Sprint Spectrum, LP to install and operate a wireless service facility on the existing tower structure at 300 Chestnut Street. Among other things, the Planning Board found that the Site "is an appropriate location for the project as it is being collocated on an existing wireless location" and that the use "will not adversely affect the neighborhood."

5

## CINGULAR'S PROPOSED FACILITY

26.    Cingular proposes to attach antennas at an antenna centerline height of 120' on the existing 152' tower.  Cingular also proposes to install within the existing fenced compound an approximately 11' x 20' equipment shelter for its ancillary equipment.  Coaxial cables will connect the antennas to the base station equipment and the facility will be served by associated power and telephone connections existing at the site.

27.    Cingular's proposal will not increase the height of the existing tower or enlarge the existing fenced equipment compound.

28.    Currently, there are multiple antennas on the tower including those of Cingular's direct competitor, Sprint Spectrum.

29.    The proposed equipment shelter will be concealed to the greatest extent possible by existing trees and vegetation.  In addition, the facility will be surrounded by an 8' fence.

30.    The proposed facility is passive and unobtrusive, requires no employees or customers on the premises, and has no characteristics that are incompatible with nearby properties.  It is not located in wetland resource areas or buffer zones, will not include any outdoor storage or any solid waste receptacles, and, because it is unmanned, will not require a means of water supply or sewage disposal.

31.    The proposed facility will involve no offensive lighting, odors, smoke, noise, or refuse materials.

32.    The proposed facility is consistent with the purpose of North Andover's Wireless Service Facilities Zoning Bylaw Section 8.9.1.a, because it is designed "to minimize the visual and environmental impacts as well as any potential deleterious impact on property value, of wireless services facilities..." and to "encourage appropriate land use, environmental protection,

6

preservation of North Andover's rural character and the provision of adequate infrastructure development in North Andover."

33.    The proposed facility would not be detrimental to the neighborhood, would be in harmony with the purposes and intent of North Andover's Zoning Bylaw, and would satisfy all of the criteria for the variance requested.

## THE NORTH ANDOVER ZONING BYLAW

34.    Section 8.9 of the North Andover Zoning Bylaws governs wireless service facilities in North Andover.  It provides that a wireless service facility may be located in any zoning district in the Town upon issuance of a Special Permit with Site Plan Review by the North Andover Planning Board, provided the carrier demonstrates that the facility is necessary to provide adequate service to the public and the facility satisfies all of the other requirements of the Town's Zoning Bylaw applicable to wireless service facilities (Section 8.9.3.a).

35.    Section 8.9.3.b provides that wireless service facilities must be located on preexistent structures if feasible unless (a) the applicant can demonstrate to the satisfaction of the Special Permit Granting Authority (the Planning Board) that it is not feasible to locate on a preexistent structure and (b) the wireless service facility is "camouflaged to the greatest extent possible."

36.    Sections 8.9(3)(c) and 8(9)(4) of North Andover's Zoning Bylaw set forth numerous dimensional and design requirements applicable to wireless service facilities, and Section 8.9(5)(d) sets forth numerous filing requirements.

37.    Section 8.9(3) was amended by the citizen-initiated Article 21 of the 2000 North Andover Town Meeting to amend setback requirements for wireless facilities.  The Attorney General approved the Amendment on October 12, 2000.  On information and belief, the

7

amendment took effect after Sprint obtained its Special Permit for the Site.

38.    Section 8.9(3)(c)(v)(1) provides in relevant part as follows: "A minimum setback of 600 feet shall be required for all wireless devices, antenna and their mounting structures, whether attached to a new or existing structure, as measured from the adjacent property line of properties which are either zoned for, or contain, residential and or educational uses of any types."

39.    Section 8.9(3)(c)(v)(2) also provides as follows: "In the event that a preexistent structure is proposed as a mount for a wireless service facility, the setback provisions of the zoning district shall apply.  In the case of the preexistent non-conforming structures, wireless service facilities and their equipment shelters shall not increase any non-conformity."

**NEED FOR ADDITIONAL COVERAGE IN NORTH ANDOVER**

40.    Cingular currently covers certain portions of western North Andover from several sites.  Existing coverage reflects transmissions from the following nearby existing/proposed facilities:

> ➢ Site MA0116, Rooftop facility, 224 Winthrop Avenue (Hampton Inn), Lawrence;
>
> ➢ Site MA0425, Rooftop facility, 23 Main Street, Andover;
>
> ➢ Site MA3045, Co-Location facility on tower on Boston Hill, North Andover; and
>
> ➢ Site MA1385, Co-Location facility on tower at Stevens' Estate, 723 Osgood Street, North Andover.

41.    Cingular submitted to the Board a radiofrequency ("RF") report, with coverage charts, demonstrating (a) the need for the facility at the Site, (b) the coverage it will provide, and (c) the other existing Cingular's facilities in North Andover and outside North Andover within one mile of its boundary.

8

42.    As demonstrated by the submitted coverage maps, without the proposed facility at this Site, Cingular will be unable to provide adequate indoor and in-vehicle coverage – and will therefore continue to have a significant gap in coverage – in this area of North Andover ("Coverage Gap").

43.    Cingular's existing facilities in the towns surrounding North Andover and its two approved facilities in North Andover provide only limited coverage in parts of North Andover. These facilities leave a significant gap in coverage in the area of the Coverage Gap at issue here.

44.    To test the existence of a coverage gap, the Board hired (at Cingular's expense ) Mark Hutchins, an independent consultant.

45.    Mr. Hutchins evaluated coverage in the Coverage Gap and confirmed that there are "significant gaps in Cingular's North Andover coverage, particularly along Salem Turnpike (Route 114) near Andover Bypass, and nearby residential areas to the north and east." He calculated that the proposed facility would "remedy" the gap "over an area just over 1.2 square miles."

46.    None of Cingular's existing or approved sites provides or is capable of providing Cingular coverage to the portions of North Andover that would be served by the proposed facility at the Site. Mr. Hutchins concurred: "These gaps are unable to be remedied by the use of existing cells; this justifies a new facility in this area which, through collocation on the SBA tower, enables closing much of the gap without building a new support structure."

47.    The Coverage Gap includes high-demand areas in which Cingular currently lacks adequate communications service.

48.    The proposed facility would also help to provide a smooth transition with existing sites to which it would provide a coverage link.

9

49.     There is no other suitable preexisting structure in this area of North Andover upon which to locate a wireless service facility. Nor has Cingular identified any superior alternative site that would enable it to provide quality coverage in the Coverage Gap.

## THE PROCEEDINGS BEFORE THE BOARD

50.     On December 2, 2004, Cingular's consultant submitted a Building Permit application to the North Andover Building Department, seeking to collocate antennas on the existing tower at the Site, with equipment in a shelter in the existing compound at the base of the tower.

51.     On December 9, 2004, the Building Inspector of North Andover denied the Building Permit, because he ruled that the proposal required both a special permit from the Planning Board and a setback variance from the Zoning Board of Appeals.

52.     Therefore, pursuant to G.L. c. 40A, § 10, and Section 10.4 of the North Andover Zoning Bylaw, Cingular submitted an application to the Board on January 10, 2005, for a variance from the 600' setback provision, section 8.9(3)(c)(v) of North Andover's Wireless Service Facilities Zoning Bylaw.

53.     The Board of Appeals initially noticed a public hearing on Plaintiff's application on February 8, 2005, and continued the matter to April 12, May 12, June 14, July 12 and August 9, 2005.

54.     During the hearings, Cingular presented its plans, radio frequency analysis, radio frequency maps, a certification by a structural engineer, dated February 17, 2005, of the structural integrity of the existing tower to support the proposed Cingular installation, and proof of compliance with FCC radio frequency emissions regulations.

55.     Cingular also presented other material demonstrating that literal compliance with

10

Section 8.9(3)(c)(v) would cause substantial hardship due to the topography and shape of the lot, and due to existing structures on the lot.

56.    The lot's unique combination of high terrain, large size and existing tower is not shared by other lots in the district. Indeed, the lot is the only one in the district that would permit coverage to this area of North Andover in compliance with the Bylaw's preference (Section 8.9.3.b) for location of wireless antennas upon existing structures. To deny needed coverage to the Coverage Gap from the Site would cause substantial hardship to Cingular in its FCC-licensed mission to provide coverage, and would cause financial hardship to the tower owner, SBA.

57.    The Board did not contest that, as Cingular stated by letter of May 6, 2005, denial of the variance would "would prevent Cingular from (a) providing effective wireless communications services to its existing and potential customers in North Andover in an area where it currently has inadequate coverage, (b) satisfying the mandate of, and realizing the rights granted by, its federal license and the federal statute and regulations pursuant to which the license was issued, and (c) improving competition in the telecommunications industry as provided for in the Federal Telecommunications Act of 1996 (at least one other wireless communications provider – Sprint – has already been permitted to install a facility on this tower)."

58.    Cingular's evidence showed that its proposed facility would comply with the intent and purpose of the bylaw justifying a variance from Section 8.9(3)(c)(v). It would minimize the number of towers in Town by using an existing communications tower, would not materially increase any adverse visual impact of the existing tower, would comply with federal regulations regarding transmissions and exposure to radiofrequency emissions, and would be unobtrusive, requiring after installation only about one trip per month for routine maintenance.

59.    Cingular also pointed out that the Board should consider the Telecommunications

11

Act in deciding whether to grant a variance, because, among other things, the "Board cannot deny a variance if in doing so it would have the effect of prohibiting wireless services. ... In other words, the need for closing a significant gap in coverage, in order to avoid an effective prohibition of wireless services, constitutes another unique circumstance when a zoning variance is required." Nextel Communications of the Mid-Atlantic, Inc. v. Town of Wayland, 231 F.Supp. 2d 396, 406-407 (D. Mass. 2002).

60.    During the Board's hearings, various citizens voiced objections to the proposed facility including, without limitation, "health issues," that would purportedly result from allowing the proposed FCC-licensed facility to operate, despite the undisputed evidence that radio frequency emissions from the proposed facility would only be a small fraction of the allowed exposure limit under FCC regulations. The total exposure from all antennas on the tower would not exceed 3.7% of FCC-allowed limits, of which Cingular's proposed facility would contribute less than 0.6% of the limits. Mr. Hutchins agreed that "cumulative exposure from the proposed facility is certain to be well below [FCC] guidelines for human exposure to RF radiation as long as tower access is restricted."

61.    The Board deliberated on August 9, 2005, after which it voted 2 to 2 on a motion to grant the requested variance. The vote operated as a denial, because Mass. Gen. Laws c. 40A, § 10 requires a supermajority of four votes in these circumstances to approve a variance.

62.    On August 23, 2005, the Board filed its Decision with the Town Clerk.

63.    In its Decision, the Board cited as justification for its denial only the boilerplate that "a literal enforcement of the dimensional provisions of the ordinance would not involve substantial hardship, financial or otherwise, to the petitioner, that desirable relief may not be granted without substantial detriment to the public good, and that desirable relief may not be

12

granted without nullifying or substantially derogating from the intent or purpose of" the Bylaw.

64.    The Board's Decision did not specify any alleged detriment to the public good or any derogation from the intent or purpose of the Bylaw that would result from placement of an additional set of antennas on an existing communications tower already used by Cingular's competitor.

65.    Nor did the Board discuss any Telecommunications Act issue, let alone whether Cingular needed the Site to close a substantial gap in coverage within the Coverage Gap,  whether denial of this application would effectively prohibit Cingular from providing coverage in the Coverage Gap, or whether denial would unreasonably discriminate against Cingular while its direct competitor enjoys unrestricted use of the tower facility.

66.    Neither the generalized concerns expressed in the Board's Decision nor any specific issue mentioned during the deliberations constitutes a valid basis for denying the requested variances.

## IRREPARABLE HARM

67.    By denying Cingular the right to install and operate its essential telecommunications facility, the Board has effectively prohibited Cingular from covering an existing significant gap in coverage within North Andover.

68.    By denying Cingular the right to use the Site, while Sprint transmits and receives wireless communications signals from the existing tower on the Site, the Board has harmed Cingular in its efforts to compete with Sprint, and has harmed competition in the wireless communications industry generally.

69.    As a result, Cingular has suffered and continues to suffer irreparable harm by being denied and delayed the opportunity to install and operate its facility at Site and by being

13

placed at a competitive disadvantage compared to Sprint, which already operates from the Site.

## COUNT I
### (Telecommunications Act of 1996 - Effective Prohibition)

70.     Cingular repeats and realleges the allegations of paragraphs 1-69, above.

71.     The Telecommunications Act provides in relevant part that "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof – (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i).

72.     The North Andover Zoning Bylaw and the Board's denial of Cingular's application for variances "prohibit[s] or ha[s] the effect of prohibiting the provision of personal wireless services," in those areas of the Town that cannot receive wireless communication coverage if the proposed facility is not constructed, in violation of Section 332(c)(7)(B)(i)(II) of the Act.

73.     The existence of a Coverage Gap, and the need to cover that gap from the Site were undisputed and indisputable.

74.     Yet, the Decision and section 8.9(c)(v) of the Bylaw prohibit use of the only structure complying with the Bylaw's stated preference to use existing structures, and no other property appears zonable for a wireless facility to cover this Coverage Gap.

75.     Indeed, as a matter of mathematics (area = $\Pi\,R^2$), the 600' setback in Bylaw Section 8.9(c)(v) requires a minimum lot size of over 1,130,000 square feet – about 26 acres. Beyond that, any proposed facility would still have to comply with the restrictive provisions of the remainder of the Bylaw.

76.     For these and other reasons stated above, the Court should declare that the North

14

Andover Zoning Bylaw and the Board's Decision violate the prohibition of § 332(c)(7)(B)(i) on its face and as applied.

## COUNT II
### (Telecommunications Act of 1996 – Unlawful Discrimination)

77.    Cingular repeats and realleges the allegations of paragraphs 1-76, above.

78.    The Act provides in relevant part that "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof – (I) shall not unreasonably discriminate among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i).

79.    The Bylaw and the Decision of the Board violate this prohibition.

80.    Without limitation, the Board's denial of Cingular's application to collocate on an existing tower on which Sprint Spectrum already operates a wireless communication facility "unreasonably discriminate[s] among providers of functionally equivalent services", in violation of Section 332(c)(7)(B)(i)(I) of the Act.

## COUNT III
### (Telecommunications Act of 1996 - No Substantial Evidence for Denial)

81.    Cingular repeats and realleges the allegations of paragraphs 1- 80, above.

82.    The Telecommunications Act provides that "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

83.    The Board's denial of Cingular's application is not supported by substantial evidence, in violation of this requirement.

84.    Without limitation, there was no substantial evidence refuting the existence of a

15

substantial gap in coverage, the ability of the proposed site to cover more than 1.2 acres of the Coverage Gap, the absence of any other existing structure that could cover the Coverage Gap, the absence of any other zonable alternative, the lack of detriment to the neighborhood, the unique characteristics of the Site and existing tower structure, or the proposal's conformity to the purposes of the North Andover Zoning Bylaw.

85.     Moreover, the Board's failure even to consider the requirements of the Telecommunications Act left it without any findings or evidence that would warrant denial of a variance.

## COUNT IV
### (Telecommunications Act of 1996 - Improper Basis)

86.     Cingular repeats and realleges the allegations of paragraphs 1-85, above.

87.     The Telecommunications Act provides in relevant part that "No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the bases of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations, concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv). The proposed installation fully complies with those regulations. The term "environmental effects" as used in this section includes health effects.

88.     The Board's denial of the variances requested by Cingular on the basis of a 600' setback in a zoning bylaw, which was adopted at the behest of citizens of the Town based upon perceived health effects, as reinforced by public comments at the hearings expressly invoking alleged health effects of an FCC-compliant facility, violates this requirement.

## COUNT V
### (M.G.L. c. 40A, Section 17)

16

89.    Cingular repeats and realleges the allegations of paragraphs 1-88, above.

90.    The Board's denial of Cingular's application is arbitrary and capricious, exceeds the Board's authority under Massachusetts General Laws Chapter 40A, lacks sufficient findings and is based on errors of law.

## COUNT VI
### (State Law: Unconstitutional As-Applied)

91.    Cingular repeats and realleges the allegations of paragraphs 1-90 above.

92.    Under the Massachusetts Constitution, a zoning bylaw, though valid generally, may be unconstitutional as applied to a particular parcel of land when, due to the peculiarities of the parcel, application of the by-law is unnecessary to accomplish the public purpose for which the by-law was created.

93.    Here, the Site has a glaring "peculiarity" – an existing telecommunications tower already serving a wireless carrier and numerous other broadcasters.

94.    Because of the existing tower and lawful communication uses at the Site, there is no public purpose served by prohibiting another wireless carrier from mounting a facility on and next to the existing tower, on the supposed ground that 600' of separation is required between wireless facilities and a residential lot line, as Section 8.9.(3)(c)(v) purports to do.

## COUNT VII
### (Declaratory Judgment)

95.    Cingular repeats and realleges the allegations of paragraphs 1-94, above.

96.    Sections 8.9.(3)(c)(v) of the Zoning Bylaw (600' setback from a residential property line) is unlawful and invalid as applied to this application and on its face.

97.    Without limitation, that provision (a) violates the Telecommunications Act of 1996, as set forth in Counts I through IV,  (b) serves no valid public purpose (and is therefore

17

unconstitutional under state and federal law) as applied to additional attachments to an existing telecommunications tower, (c) is void for vagueness in general and/or as applied here, and (d) conflicts with the uniformity requirement of G.L. c. 40A, section 4 ("Any zoning ordinance or by-law which divides cities and towns into districts shall be uniform within the district for each class or kind of structures or uses permitted").

98.    Because Section 8.9.(3)(c)(v) has no purpose beyond effectuating supposed health-based objections to the environmental emissions of a facility that complies with FCC radiofrequency emissions regulations, it is preempted by federal law on its face and as applied.

## COUNT VIII
### (Declaratory Judgment – Preemption Of RFR Monitoring by FCC Jurisdiction)

99.    Cingular repeats and realleges the allegations of paragraphs 1 – 98 above.

100.    Section 8.9(8)(a) of the North Andover Bylaw purports to regulate radio frequency emissions from federally licensed wireless telecommunications facilities by requiring "RFR [radiofrequency radiation] measurements . . . at annual intervals from the date of issuance of the Special Permit."

10.1    This regulation purports to apply not only to the Site, but to all existing sites of all wireless carriers.

102.    Through this section, the Town of North Andover purports to regulate a field that Congress has reserved exclusively to the FCC.

103.    In the Communications Act of 1934, Congress granted the field of regulating radio frequency transmissions exclusively to the FCC. See, e.g. 47 U.S.C. §§ 152(a), 301.

104.    The Communications Amendments Act of 1982 confirmed and strengthened the FCC's federal authority over radio frequency emissions. See 47 U.S.C. § 302(a). H.R. Conf.

18

Rep. No. 97-765, at 23, 33 (1982), reprinted in 1982 U.S.C.C.A.N. 2261, 2267, 2277.

105.    Pursuant to its statutory authority, the FCC has promulgated regulations setting forth both exposure limits for RF emissions and specific mechanisms for enforcing those exposure limits.  In doing so, it has expressly refrained from imposing unnecessary and burdensome requirements upon carriers, consistent with Congress' intention to make competitive, cost-effective communications services available to all Americans.

106.    The FCC has promulgated RF exposure limits in 47 CFR 1.1310. According to Table 1 in that regulation, the exposure limit in the 1900 MhZ band, one of the bands in which Cingular operates, is 1 milliwatt (1,000 microwatts) per square centimeter – many times greater than the actual maximum exposure at ground level from Cingular's facilities in North Andover.  The MPE limits are calculated assuming the maximum power density with *all channels* operating at their *maximum* power.

107.    The FCC also expressly regulates when a routine compliance evaluation regarding these limits is and is not required: "A determination of compliance with the exposure limits in Sec. 1.1310 or Sec. 2.1093 of this chapter (**routine environmental evaluation**), and preparation of an EA if the limits are exceeded, is necessary **only for facilities, operations and transmitters that fall into the categories listed in table 1,** or those specified in paragraph (b)(2) of this section. **All other facilities, operations and transmitters are categorically excluded from making such studies** or preparing an EA, except as indicated in paragraphs (c) and (d) of this section [relating to environmental assessments ("EA"), not to routine evaluation]."  47 C.F.R. 1.1307(b)(1) (emphasis added).

108.    The applicable table in 47 C.F.R. 1.1307(b) shows that PCS facilities are categorically excluded from routine evaluation as long as they are 10 meters (approximately 32.8

feet) above ground:

Table 1 - Transmitters, Facilities and Operations Subject to Routine Environmental Evaluation

| Service (title 47 CFR rule part) | Evaluation required if: |
|---|---|
| Personal Communications Services (part 24) | . . .        (2) Broadband PCS (subpart E): non-building-mounted antennas: height above ground level to lowest point of antenna, 10m and total power of all channels =2000 W ERP (3280 W EIRP) . . . |

109.     All of Cingular's non-building mounted antennas in North Andover (including the Site) are much more than 10 meters AGL.

110.         Carriers on a multi-carrier telecommunications tower (like the Site) only have responsibility for correcting any excessive RF emissions from the entire tower if their power density levels contribute 5% or more of the exposure limit applicable to the tower. 47 C.F.R. 1.1307(b)(3).

111.     Based upon worst-case calculations at the Site, Cingular would contribute less than or equal to 0.6% of the total exposure limit.

112.     The purpose of the FCC RF evaluation regulations is "to provide a proper balance between the need to protect the public and workers from exposure to excessive RF electromagnetic fields and the need to allow communications services to readily address growing marketplace demands." 62 Fed. Reg. 47960, 47961 (9/12/97).

113,     "Use of the new guidelines will ensure that the public and workers receive adequate protection from exposure to potentially harmful RF electromagnetic fields." Id. at 47962.

114.     Local zoning provisions having the "intent and effect ... to regulate the operations - not the placement, construction and modification - of licensed facilities" are preempted because they focus on "radio frequency regulation rather than local land use concerns" (In Re Cingular

Wireless, L.L.C, 2003 WL 21517835, FCC Docket No. 02-100 (July 7, 2003)  at page 10-11).

115.    Nor are preempted local regulations saved by the claim that the local government is attempting to "assure itself that a carrier is complying with FCC standards" where the regulation is "effectively regulating federally licensed operation" as opposed to "traditional zoning regulation of the physical facility." Id.

116.    The annual RFR measurement requirement of North Andover Bylaw Section 8.9(8) is therefore preempted in its entirety.

117.    In addition, the Planning Board Decision imposed condition 2(b), which requires annual monitoring substantially identical to that set forth in the North Andover Bylaw.  That condition is unlawful for the same reasons.  The condition also unlawfully requires Cingular to monitor the emissions of all carriers, which is not Cingular's responsibility where Cingular does not own the tower.  In addition, imposition of that condition lacked substantial evidence and constitutes unlawful regulation on the basis of health effects, beyond what is required by the FCC.  47 U.S.C. § 332(c)(7)(B)(iii), (iv).

WHEREFORE, Cingular requests that this Court enter judgment:

1.    Declaring that the North Andover Bylaw and the Board's Decision violate the Telecommunication Act of 1996;

2.    Granting temporary, preliminary, and permanent injunctive relief ordering that Cingular be permitted immediately to install its proposed facility in accordance with its application and plans therefor;

3.    Annulling the portion of the Board's Decision denying Cingular's application for variances;

4.    Declaring that Section 8.9.(3)(c)(v) of the Zoning Bylaw (600' setback from a

21

residential lot line) is unlawful and invalid as applied and on its face;

5.    Declaring that Section 8.9(8)(a) is preempted and invalid as applied to facilities exempt from annual review under FCC regulations.

6.    Ordering the Board to issue the requested variances and all other zoning relief necessary for the proposed facility;

7.    Annulling condition 2(b) of the Planning Board Decision;

8.    Awarding Cingular reasonable attorneys' fees and costs; and

9.    Awarding Cingular such other and further relief as the Court deems just and proper.

> The Plaintiff
> By its attorneys,
>
> ___/s/___ Douglas H. Wilkins_____
> Stephen D. Anderson (BBO #018700)
> Douglas H. Wilkins (BBO #528000)
> Scott Lacy (BBO #633323)
> ANDERSON & KREIGER LLP
> 43 Thorndike Street
> Cambridge, MA 02141
> (617) 252-6575

Dated: July 28, 2006

g:\docs\cin\ma\northandoverchestnut\p\suppamendedfed-complaint01.doc

22





Town Clerk Time Stamp

# Town of North Andover
## Community Development and Services Division
### Office of the Zoning Board of Appeals
400 Osgood Street
North Andover, Massachusetts 01845

Raymond Santilli,
Interim Community
Development Director

Telephone    (978) 688-9541
Fax          (978) 688-9542

Any appeal shall be filed within
(20) days after the date of filing
of this notice in the office of the
Town Clerk, per Mass. Gen. L. ch.
40A, §17.

**Notice of Decision**
**Year 2005**

**Property at: 300 Chestnut Street**

RECEIVED
TOWN CLERK'S OFFICE
2005 AUG 23 PM 4: 28
TOWN OF
NORTH ANDOVER
MASSACHUSETTS

| NAME: | Cingular Wireless LLC, 580 Main Street, Bolton, MA 01740 | HEARING(S): | February 8, April 12, May 12, June 14, July 12, & August 9, 2005 |
|---|---|---|---|
| ADDRESS: | for premises at: **300 Chestnut Street** North Andover, MA 01845 | PETITION: | 2005-001 |
| | | TYPING DATE: | August 11, 2005 |

The North Andover Board of Appeals held a public hearing at its regular meeting on Tuesday, August 9, 2005 at 7:30 PM in the Town Hall top floor meeting room, 120 Main Street, North Andover, Massachusetts upon the application of **Cingular Wireless LLC**, 580 Main Street, Bolton, MA 01740, for premises at: **300 Chestnut Street**, North Andover, requesting a dimensional Variance from Section 8, Paragraph 8.9(3)(c)(v) of the Zoning Bylaw, minimum requirements of the distance to lot lines, in order to install additional antennas on the existing antenna tower. Said premise affected is property with frontage on the East side of Chestnut Street within the R-3 zoning district. The legal notices were published in the Eagle Tribune on January 24 & January 31, 2005.

The following voting members were present: Ellen P. McIntyre, Richard J. Byers, Thomas D. Ippolito, and Richard M. Vaillancourt. The following non-voting members were present: Joseph D. LaGrasse and David R. Webster.

Upon a motion by Richard J. Byers and 2nd by Richard M. Vaillancourt, the Board voted to grant the dimensional Variance from Section 8, Paragraph 8.9(3)(c)(v), minimum requirements of the distance to the lot lines in order to install additional antennas on the existing antenna tower.

Voting in favor of the motion: Ellen P. McIntyre and Richard J. Byers.
Voting to deny the motion: Thomas D. Ippolito and Richard M. Vaillancourt.

The Board finds that the motion for the Variance petition failed to receive the required super majority of four votes, per Mass. Gen. L. ch. 40A §15. The Board finds that the applicant was requested to address the issue of hardship in general as well as hardship as it pertains to soil, shape, and topography during the April 12, 2005 hearing. The applicant provided the May 6, 2005 written response and the May 12, 2005 verbal response during the hearing to the issue of hardship as it pertains to gap coverage, but not to soil, shape and topography. The Board finds that owing to circumstances relating to the soil conditions, shape, or topography of the land or structures, and especially affecting such land but not affecting generally the zoning district in which it is located, a literal enforcement of the dimensional provisions of the ordinance would not involve substantial hardship, financial or otherwise, to the petitioner, that desirable relief may not be granted without substantial detriment to the public good, and that desirable relief may not be granted without nullifying or substantially derogating from the intent or purpose of this Bylaw as stated in Section 1 and Section 10, Paragraph 10.4.

ATTEST:
A True Copy
Joyce A. Bradshaw
Town Clerk

Town of North Andover
Board of Appeals,

Ellen P. McIntyre
Ellen P. McIntyre, Chair
Decision2005-001
M98.CP2.

# B



This is to certify that twenty (20) days
have elapsed from date of decision, filed
without filing of an appeal.
Date  JUNE 30, 2006
Joyce A. Bradshaw
Town Clerk

RECEIVED
TOWN CLERK'S OFFICE

2006 JUN -9  PM 4: 27

TOWN OF
NORTH ANDOVER
MASSACHUSETTS

**PLANNING DEPARTMENT**
Community Development Division

**NOTICE OF DECISION**

**Any appeal shall be filed
within (20) days after the
date of filing this notice in
the office of the Town Clerk.**

**Date: May 8, 2006**
**Date of Hearing(s): May 16 and May
30, 2006**
**Date of Decision: May 31, 2006**

Petition of:          **New Cingular Wireless PCS, LLC.**
                      **580 Main Street**
                      **Bolton, MA 07140**

Premises Affected:    **0 Chestnut Street, Assessors Map 98C, Parcel 2**
                      **Residential 3 Zoning District**

Referring to the above petition with provisions from Section 8.9 of the North Andover Zoning
Bylaw for a Site Plan Special Permit for the installation of twelve (12) coaxial cable antennas on
an existing wireless service facility/tower and an 11' x 26' equipment shelter for ancillary
equipment.  Property is located within the Residential 3 (R3) zoning district.

At a public hearing given on the above date, the Planning Board voted to **APPROVE a Site Plan
Special Permit** with a unanimous vote of 5-0 based on the following conditions:

Signed: Lincoln Daley
Lincoln Daley, Town Planner

cc:    Applicant
       Engineer               Richard Nardella, Chair
       Abutters               John Simons, Vice Chair
       Town Departments       Richard Rowen, acting Clerk
                              Alberto Angles
                              Jack Green

ATTEST:
A True Copy
Joyce A. Bradshaw
Town Clerk

**New Cingular Wireless PCS, LLC**
**0 Chestnut Street, Map 98C, Parcel 2**
**Site Plan Special Permit**

The Planning Board herein approves the Special Permit to install twelve (12) coaxial cable antennas on an existing 152' tower and an 11' x 26' equipment shelter for ancillary equipment within the existing fenced area.   The affected property is located at 0 Chestnut Street, Map 98C, Parcel 2 within the Residential 3 Zoning District. This Special Permit was requested by New Cingular Wireless PCS, LLC., 580 Main Street, Bolton, MA 07140.  This application and additional documentation as cited herein was filed with the Planning Board on March 10, 2006 with subsequent submittals on file.

The Planning Board makes the following findings as required by the North Andover Zoning Bylaw Section 8.9:

## FINDINGS OF FACT:

1.  The specific site is an appropriate location for the project as it is being co-located on an existing wireless location.

2.  The use as developed will not adversely affect the neighborhood as indicated by the analysis conducted by Arvin Sebastian, Radio Frequency Specialist, Cingular Wireless and Mark F. Hutchins, Radio Frequency Engineer, Outside Consultant for the Town of North Andover.

3.  The carrier has demonstrated that the facility is necessary in order to provide adequate service to the public.

4.  The plan meets the requirements of the Wireless Service Facilities By-law section 8.9. The granting of the Site Plan Special Permit is subject to the granting of the Variance from the Zoning Board of Appeals from Section 8, Paragraph 8.9(3)(c)(v), minimum requirements of the distance to the lot lines in order to install additional antennas on the existing antenna tower.

5.  Adequate and appropriate facilities will be provided for the proper operation of the proposed use.  The visual impacts of the project will be diminutive and represents a marginal addition to the existing wireless service facility.

Finally the Planning Board finds that this project generally complies with the Town of North Andover Zoning Bylaw requirements as listed in Section 8.9 but requires conditions in order to be fully in compliance.  The Planning Board hereby grants an approval to the applicant provided the following conditions are met:

## SPECIAL CONDITIONS:

**1) Discontinuance Abandonment**

a)  At such time that a licensed carrier plans to abandon or discontinue operation of wireless service equipment, such carrier will notify the Town by certified US mail of the proposed date of abandonment or discontinuation of operations. Such notice shall be given no less

2

New Cingular Wireless PCS, LLC
0 Chestnut Street, Map 98C, Parcel 2
Site Plan Special Permit

than 30 days prior to abandonment or discontinuation of operations. In the event that a licensed carrier fails to give such notice, the wireless service equipment shall be considered abandoned upon discontinuation of operations.

b) Upon abandonment or discontinuation of use, the carrier shall physically remove the wireless service equipment placed on the site by the carrier within 90 days from the date of abandonment or discontinuation of use. "Physically remove" shall include, but not be limited to:

   i) Removal of antennas, mount, equipment shelters and security barriers installed by the carrier (unless the same will continue to be used by the owner) from the subject property.

   ii) Proper disposal of the waste materials generated by the carrier from the site in accordance with local and state solid waste disposal regulations.

c) As a condition of any special permit for the placement, construction or modification of wireless service equipment at the site, the carrier shall place into escrow a sum of money to cover the costs of removing the facility from the subject property. Said amount shall be certified by an engineer, architect or other qualified professional registered to practice in the Commonwealth of Massachusetts. Said funds shall be held by an independent escrow agent to be appointed by the carrier and the SPGA. The carrier shall authorize and, as necessary, shall obtain the authorization of the owner of the property to allow the escrow agent to enter upon the subject property to remove the facility when the facility has been abandoned or discontinued. In the event the posted amount does not cover the cost of demolition and/or removal the Town may place a lien upon the property covering the difference in cost.

d) The equipment shall be deemed to be abandoned or discontinued if it has not been used for the purpose for which it was originally constructed for a period of six (6) months or more. Once abandonment or discontinuance has occurred, the carrier shall remove the equipment placed by the carrier from the subject property within ninety days. In the event that the carrier fails to remove the equipment, the town shall give notice to the carrier and the independent escrow agent that the equipment shall be removed by the escrow agent forthwith and the escrow agent, after affording written notice seven days in advance to the carrier, shall remove the facility.

## 2) Term of Special Permit.

a) A Special Permit issued for any wireless service facility shall be valid for **three (3)** years. The special permit may be renewed under the same criteria as the original special permit, provided that the application for renewal of the special permit is made prior to the expiration date of the original or any renewed special permit. Additional measures governing the administration of the special permit are found in Section 10.3 of the Zoning Bylaw.

New Cingular Wireless PCS, LLC
0 Chestnut Street, Map 98C, Parcel 2
Site Plan Special Permit

b) After the equipment on the facility is in operation, the applicant shall submit to the SPGA, within 90 days of beginning operations and at annual intervals from the date of issuance of the Special Permit, preexistent and current RFR measurements. Such measurements shall be signed and certified by an RF engineer, stating that RER measurements are accurate and are in compliance or why the measurements fail to comply with all applicable FCC Guidelines as specified in Section 8.9(4)(c)(1) RFR Filing Requirements of this Bylaw. The measurements shall be submitted for the equipment proposed on this facility. **This condition shall be in effect until such time as an additional carrier proposes equipment on this facility. At that time, this obligation will fall upon the proponent of the additional equipment so as to obtain a better measure of the cumulative effect of the facility.**

c) The applicant and co-applicant or their successor in interest shall maintain the wireless service equipment in good condition. Such maintenance shall include, but shall not be limited to, painting, structural integrity of the equipment.

3. **Prior to the endorsement of the plans by the Planning Board, the applicant must comply with the following conditions:**

a) The applicant shall provide a map indicating the intended locations for testing as required above.

b) A bond in the amount of **$1,000** shall be posted for the purpose of insuring that a final as-built plan showing the location of all on-site structures. The bond is also in place to insure that the site is constructed in accordance with the approved plan. This bond shall be in the form of a check made out to the Town of North Andover. This check will then be deposited into an interest bearing escrow account.

4. **Prior to the start of construction:**

a) A construction schedule shall be submitted to the Planning Staff for the purpose of tracking the construction and informing the public of anticipated activities on the site.

5. **Prior to FORM U verification (Building Permit Issuance):**

a) The final site plan mylars must be endorsed and three (3) copies of the signed plans must be delivered to the Planning Department.

b) A certified copy of the recorded decision must be submitted to the Planning Department.

c) The granting of the Site Plan Special Permit is subject to the granting of the Variance from the Zoning Board of Appeals from Section 8, Paragraph 8.9(3)(c)(v), minimum requirements of the distance to the lot lines in order to install additional antennas on the

New Cingular Wireless PCS, LLC
0 Chestnut Street, Map 98C, Parcel 2
Site Plan Special Permit

existing antenna tower.  A copy of the decision granting said Variance must be submitted to the Planning Department.

6.  **Prior to verification of the Certificate of Use and Occupancy:**

a)  The applicant must submit a letter from the architect or engineer of the project stating that the construction and operations substantially comply with the plans referenced at the end of this decision as endorsed by the Planning Board.

b)  All lighting (if applicable) placed by the carrier on the subject property shall have underground wiring and shall be so arranged that all direct rays from such lighting falls entirely within the site and shall be shielded or recessed so as not to shine upon abutting properties or streets. The Planning Office must approve any changes to the approved lighting plan as submitted by the applicant.

7.  Prior to the final release of security:

a)  A final as-built plan showing final construction and location of the wireless hardware shall be submitted to and reviewed by the Planning Staff.

8.  Any stockpiling of materials (dirt, wood, construction material, etc.) must be shown on a plan and reviewed and approved by the Planning Staff.  Any approved piles must remain covered at all times to minimize any dust problems that may occur with adjacent properties.  Any stockpiles to remain for longer than one week must be fenced off and covered.

9.  In an effort to reduce noise levels, the applicant shall keep in optimum working order, through regular maintenance, any and all equipment that shall emanate sounds from the structures or site.

10. No equipment or other equipment that will emanate noise-exceeding levels cited herein shall be placed on the exterior of the structure.  Such equipment shall be enclosed as shown on the plans.

11. All site lighting shall provide security for the site and structures however it must not create any glare or project any light onto adjacent residential properties.

12. The contractor shall contact Dig Safe at least 72 hours prior to commencing any excavation.

13. The provisions of this conditional approval shall apply to and be binding upon the applicant, its employees and all successors and assigns in interest or control.

5

New Cingular Wireless PCS, LLC
0 Chestnut Street, Map 98C, Parcel 2
Site Plan Special Permit

14. Any action by a Town Board, Commission, or Department that requires changes in the plan or design of the building as presented to the Planning Board, may be subject to modification by the Planning Board.

15. Any revisions shall be submitted to the Town Planner for review. If these revisions are deemed substantial, the applicant must submit revised plans to the Planning Board for approval.

16. This Special Permit approval shall be deemed to have lapsed after two years from the date permit granted unless substantial use or construction has commenced. Substantial use or construction will be determined by a majority vote of the Planning Board.

17. The following waivers were granted in determining this decision:
    a) 8.9.5.d.ii.4 – Waiver to provide a map of all wireless communications facilities in and within 1 mile of North Andover.
    b) 8.9.5.d.iii.3 - Waiver requiring the depiction of tree cover.
    c) 8.9.5.d.iii.4 – Waiver requiring the depiction of all buildings on properties adjacent to subject property.
    d) 8.9.5.d.iii.8 – Waiver to provide distance, grade from the proposed wireless communication facility to each building on the vicinity plan.
    e) 8.9.5.d.iii.9 – Waiver to provide contours at 2 feet AMSL for the subject property and adjacent properties within 300 feet.
    f) 8.9.5.d.iii.12 – Waiver to provide lines representing the sight line showing the viewpoint and visible point from "Sight Lines" subsection.
    g) 8.9.5.d.iv – Waiver to provide sight lines and photographs.
    h) 8.9.5.d.v.3 – Waiver to provide "color board".
    i) 8.9.5.d.v.6 – Waiver to provide landscape plan.
    j) 8.9.5.d.v.7 - Waiver to schedule a balloon test with the Planning Board at the proposed site.
    k) 8.9.5.d.v.8 – Waiver to provide FAA lighting printout.
    l) 8.9.5.d.vi - Waiver to provide noise-filing requirements.
    m) 8.9.5.d.viii.2 – Waiver to provide hazardous waste identification filing requirement.

18. The following information shall be deemed part of the decision:
    Plan titled:        Cingular Wireless
                        Site Name: North Andover – SBA COLO
                        Site No.: BOS-020·(855)

    Prepared for:    Cingular Wireless PCS, LLC.
                     580 Main Street
                     Bolton, MA 07140

    Prepared by :    Clough Harbour & Associates LLP
                     313 Littleton Road, Suite 15

New Cingular Wireless PCS, LLC
0 Chestnut Street, Map 98C, Parcel 2
Site Plan Special Permit

|  | Chelmsford, MA 01824-3364 |
|---|---|
| Dated: | 11/24/04, Revised 12/23/04 |
| Sheets: | T01, C01, C01 A, C01 C, C02-C05, E01-E6 |
| Report: | Application for Site Plan Special Permit by Cingular Wireless PCS, LLC., March 10, 2006 |
| Prepared for: | Cingular Wireless PCS, LLC. |
| Prepared by: | Anderson & Kreiger LLP |
|  | 43 Thorndike Street |
|  | Cambridge, MA 02131-1764 |

cc.     Applicant
        Engineer
        DPW
        Building Department